UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAKE UNION DRYDOCK COMPANY,<br><br>                    Plaintiff,<br>       v.<br><br>AMAK TOWING COMPANY, et al.,<br><br>                    Defendants. | CASE NO. 2:25-cv-00931-LK<br><br>ORDER DENYING MOTION TO DISMISS AND ORDER TO SHOW CAUSE |

This matter comes before the Court on Defendant Amak Towing Company's Motion to Dismiss or, in the Alternative, Transfer. Dkt. No. 9. Plaintiff Lake Union Drydock Company opposes the motion. Dkt. No. 13. For the reasons explained below, the Court denies the motion because Amak did not comply with the Court's meet and confer requirement before filing the motion. The Court also orders Amak to show cause why the Brian T should not be dismissed for lack of in rem jurisdiction, and orders the parties to show cause why sanctions should not be imposed for misrepresentation of the contract at issue.

## I. BACKGROUND

This dispute involves an allision near Kodiak, Alaska between the National Oceanic and Atmospheric Administration ("NOAA") research vessel Fairweather and in rem Defendant M/V Brian T, Official Number 1028597. Dkt. No. 1 at 2–4; Dkt. No. 9 at 2, 4. The Brian T is owned and operated by Amak, which is a tug and barge company organized under the laws of Alaska with its principal place of business and registered offices in Ketchikan, Alaska. Dkt. No. 1 at 3; Dkt. No. 11 at 1.

In May 2024, a NOAA employee asked Lake Union Drydock for assistance bringing the Fairweather into port to avoid an approaching storm. Dkt. No. 12 at 1–2; Dkt. No. 12-1 at 4–5, 8–9. Lake Union Drydock contacted Amak to seek assistance with that task, Dkt. No. 12 at 2; Dkt. No. 12-1 at 2–4, 7–8, and on May 29, 2024, Lake Union Drydock sent Amak a purchase order for towing services for the Fairweather, Dkt. No. 12-1 at 11–15 (purchase order number 146475). Later that day, the Brian T began efforts to bring the Fairweather to Kodiak. Dkt. No. 12 at 3. However, "[w]hile preparing for the tow, the [Brian T] struck the [Fairweather,] causing port side hull damage" while the Fairweather "was at anchor in navigable waters[.]" Dkt. No. 1 at 3. "Due to the hull damage caused by the [Brian T], the [Fairweather] was required to undergo immediate and extensive steel repairs, requiring drydocking," which was paid for in full by Lake Union Drydock. *Id.* at 3–4. Lake Union Drydock issued Amak an invoice for $1,301,763.00, plus interest, for the repairs. *Id.* at 4. However, Lake Union Drydock alleges that Amak "refuses to pay [Lake Union Drydock] for the [Fairweather's] hull repairs . . . despite [Lake Union Drydock's] reasonable efforts to obtain the same pursuant to the terms contained within PO #146475." *Id.*

On May 16, 2025, Lake Union Drydock filed suit in this Court, asserting claims for breach of marine contract, subrogation, breach of an implied warranty of workmanlike performance, and negligence. *Id.* at 4–6. It alleges that Amak is responsible for the full costs of the hull damage

repairs to the Fairweather because the subcontract executed by the parties, PO #146475, required that Amak "defend, indemnify, and hold Lake Union Drydock harmless from any and all claims, costs, damages, losses, and liabilities arising from Amak's services as a subcontractor." *Id.* at 2, 4.

Amak filed this motion on July 14, 2025, seeking dismissal based on lack of personal jurisdiction and improper venue. Dkt. No. 9 at 1. Amak argues that in the alternative, "the Court should transfer the action to the United States District Court for the District of Alaska at Ketchikan pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a)." *Id.* Lake Union Drydock filed a response arguing that the forum selection clause in the purchase order designating this district as the chosen forum is valid and enforceable, and that even absent the clause, Amak's substantial contacts with this district establish personal jurisdiction over it. *See generally* Dkt. No. 13.

## II.  DISCUSSION

As the parties are aware, the Court's Standing Order for All Civil Cases requires that counsel "make a meaningful effort to confer prior to filing a dispositive motion." Dkt. No. 5-1 at 4. In its motion to dismiss, Amak states that in accordance with that Order, "the parties have met and conferred in advance of the filing of the present motion, but were unable to reach any agreement." Dkt. No. 9 at 1. But the parties' filings do not show that they actually met and conferred.

The Local Civil Rules defines a "Meet and Confer" as "a good faith conference *in person or by telephone* to attempt to resolve the matter in dispute without the court's involvement." LCR 1(c)(6) (emphasis added). Despite this requirement, counsel never talked to each other. Instead, Amak's counsel sent Lake Union Drydock's counsel a courtesy copy of its motion to dismiss and "inquired as to whether or not Plaintiff would agree to dismiss the present matter voluntarily and refile it in the United States District Court for the District of Alaska at Ketchikan." Dkt. No. 10 at 2. Lake Union Drydock's counsel then left Amak's counsel a voicemail stating that "Plaintiff was

not willing to dismiss the present matter voluntarily and refile it in the United States District Court for the District of Alaska at Ketchikan." *Id.*; *see also id.* at 5–6 (email thread); Dkt. No. 14 at 2; Dkt. No. 14-1 at 2–4. Amak's counsel then emailed: "As I understand it, you will not agree to the dismissal. I believe this satisfies our meet and confer obligation[.]" Dkt. No. 10 at 5; Dkt. No. 14-1 at 2. This back and forth does not comply with the Court's Standing Order or with Local Civil Rule 1.

The Court's meet-and-confer requirement "is not a meaningless formality, nor is it optional; instead, the purpose of a meet and confer requirement is for the parties to engage in a meaningful dialogue about their respective positions on disputed issues to see whether they can resolve (or at least refine) the disputes without court intervention, saving time and money for the litigants as well as the court system." *In re Glumetza Antitrust Litig.*, No. 19-CV-05822-WHA(RMI), 2020 WL 3498067, at *5 (N.D. Cal. June 29, 2020); *see also Cont'l Cas. Co. v. Titan Worldwide, LLC*, No. 2:24-cv-01158-LK, 2025 WL 790214, at *3 (W.D. Wash. Mar. 12, 2025). It is the movant's (here, Amak's) responsibility to ensure that a fulsome discussion of the contested issues actually takes place. To be sure, a pre-filing meet-and-confer "may not avoid or even significantly narrow every motion," but counsel "are not excused from their obligation to meet and confer simply because they believe meeting and conferring would probably not moot an anticipated motion." *Mollica v. Cnty. of Sacramento*, No. 2:19-CV-02017-KJM-DB, 2022 WL 15053335, at *1 (E.D. Cal. Oct. 26, 2022). Because Amak did not comply with the meet and confer requirement, the Court denies its motion. Going forward, the Court will summarily deny motions that are not preceded by a meaningful, substantive discussion about the motion. This includes dispositive motions, Dkt. No. 5-1 at 4, and any other motions for which a meet and confer is required under the Local Civil Rules, *see, e.g.*, LCR 37 (discovery motions). The Court also cautions counsel that it may impose sanctions for future violations of its Standing Order.

### III.  CONCLUSION AND ORDER TO SHOW CAUSE

For the foregoing reasons, the Court DENIES Amak Towing Company's Motion to Dismiss or, in the Alternative, Transfer. Dkt. No. 9. The Court also ORDERS as follows pursuant to its independent obligation to ascertain jurisdiction and pursuant to its authority under Federal Rule of Civil Procedure 11:

1. Within 21 days of the date of this Order, Lake Union Drydock is ORDERED TO SHOW CAUSE why the Brian T should not be dismissed from this case for lack of in rem jurisdiction. *See Dunn v. Hatch*, No. C14-01541-JPD, 2015 WL 4479463, at *4 (W.D. Wash. July 22, 2015). Amak may file an optional response within seven days of Lake Union Drydock's submission.

2. Within 21 days of the date of this Order, the parties are ORDERED to submit a joint status report identifying which version of the purchase order Amak received; if it received the version attached to the complaint—which includes a page of Terms and Conditions, Dkt. No. 1-1 at 4, and Standard Subcontract Supplemental Terms and Conditions, *id.* at 5–6—Amak is ORDERED TO SHOW CAUSE in the joint status report why sanctions should not issue for its representation to the Court that it submitted a "true and correct" copy of the purchase order at docket entry 12-1, pages 11–15, Dkt. No. 12 at 3; if it received the version attached to the Adams Declaration, Lake Union Drydock is ORDERED TO SHOW CAUSE in the joint status report why sanctions should not issue for its representation to the Court that it submitted a "true and correct" copy of the purchase order at docket entry 1-1, pages 1–6, Dkt. No. 1 at 2. Lake Union Drydock is also ORDERED to submit to the Court the prime contract and the "flow down" requirements referenced in the purchase order, Dkt. No. 1-1 at 1, 3, 5, and to

address in the joint status report whether those documents were provided to Amak such that a "true and correct" version of the purchase order would have included them.[1]

Alternatively, should the parties consent to transfer venue, they are encouraged to notify the Court as soon as possible.

Dated this 2nd day of December, 2025.

*Lauren King* (signature)

Lauren King
United States District Judge

---

[1] The Court notes that, on top of the parties' failure to address jurisdiction over the Brian T and the discrepancies in the purchase orders provided to the Court, their briefing suffers from other deficiencies. For example, although both parties rely on the factors in 28 U.S.C. § 1391 regarding venue, Dkt. No. 9 at 22–23; Dkt. No. 13 at 16, neither party addresses whether that statute is applicable in this admiralty action, *see, e.g.*, *Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d 1145, 1154–55 (S.D. Cal. 2021); *Dunn*, 2015 WL 4479463, at *5; *see also* 28 U.S.C. § 1390(b).